**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

VLCOR USA INC.,

Plaintiff,

v.

U.S. CUSTOMS AND BORDER PROTECTION,

RODNEY S. SCOTT, in his official capacity as Commissioner of the U.S. Customs and Border Protection,

U.S. DEPARTMENT OF HOMELAND SECURITY,

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security,

U.S. DEPARTMENT OF COMMERCE,

HOWARD LUTNICK, in his official capacity as Secretary of the U.S. Department of Commerce,

OFFICE OF THE U.S. TRADE REPRESENTATIVE,

JAMIESON GREER, in his official capacity as U.S. Trade Representative,

U.S. INTERNATIONAL TRADE COMMISSION,

EXECUTIVE OFFICE OF THE PRESIDENT,

U.S. DEPARTMENT OF THE TREASURY,

SCOTT BESSENT, in his official capacity as the Secretary of the U.S. Department of the Treasury,

and

UNITED STATES OF AMERICA,

Defendants.

Case No. 26-03764

**COMPLAINT**

## INTRODUCTION

1. Beginning in February 2025, the Executive Branch relied on the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., to impose significant tariffs on merchandise imported from other countries through a series of executive orders.

2. In *V.O.S. Selections, Inc. v. United States*, this Court held that IEEPA does not authorize the challenged executive orders and the executive orders are invalid as contrary to law—a decision that was affirmed in relevant part by the U.S. Court of Appeals of the Federal Circuit and the U.S. Supreme Court. 772 F. Supp. 3d 1350, 1383-84 (Ct. Int'l Trade 2025), *aff'd in part, vacated in part, remanded sub nom. V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025),[1] *cert. granted*, 146 S. Ct. 73 (2025), *and aff'd sub nom. Learning Res., Inc. v. Trump*, No. 24-1287, 2026 WL 477534, at *13-14 (U.S. Feb. 20, 2026).[2]

3. As an importer of record for merchandise subject to the tariffs imposed by the executive orders utilizing IEEPA to impose such tariffs, Plaintiff VLCor USA Inc. files this action to obtain judicial relief, including a judgment against Defendants, from the injury Plaintiff has suffered from the imposition of the unlawful IEEPA tariffs, and the injury it will continue to suffer until such time as Plaintiff receives a full refund of all IEEPA tariffs paid, plus interest at the legal rate.

## JURISDICTION

4. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i), because this action is commenced against the United States, as well as agencies and

[1] The Federal Circuit held that the challenged executive orders exceed the authority delegated under IEEPA and are invalid as contrary to law. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1340 (Fed. Cir. 2025), *cert. granted*, 146 S. Ct. 73 (2025), *and aff'd sub nom. Learning Res., Inc. v. Trump*, No. 24-1287, 2026 WL 477534 (U.S. Feb. 20, 2026).

[2] The Supreme Court concluded "that IEEPA does not authorize the President to impose tariffs." *Learning Res., Inc. v. Trump*, No. 24–1287, 2026 WL 477534, at *14 (U.S. Feb. 20, 2026).

officers of the United States, and arises out of a law providing for the collection of tariffs. *Learning Res.*, 2026 WL 477534, at *6 n.1 (cleaned up); *see also AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, 2025 WL 3634261, at *3 (Ct. Int'l Trade 2025).[3]

5. The Court has all the powers in law and equity of, or as conferred by statute upon, a district court of the United States. 28 U.S.C. § 1585. The Court may enter a money judgment against the United States in any civil action commenced under 28 U.S.C. § 1581, as well as order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition. 28 U.S.C. § 2643(a)(1), (c)(1).

6. Plaintiff is the importer of record for goods imported into the United States from China, a country that was subject to the unlawful tariffs imposed by the executive orders issued by the Executive Branch providing for the collection of tariffs under IEEPA, requiring Plaintiff to pay IEEPA tariffs. As of this filing, Plaintiff has not received a refund of all the IEEPA tariffs it paid. Plaintiff has therefore suffered injury, and continues to suffer injury, conferring standing to bring this action.

## PARTIES

7. Plaintiff VLCor USA Inc., a Delaware company headquartered in El Segundo, California, is a supplier of elements and metal alloys. During the period at issue, Plaintiff imported niobium metal sheets from China.

[3] *See also AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, 2025 WL 3634261, at *3 (Ct. Int'l Trade 2025) (cleaned up) ("[T]he Federal Circuit has concluded that—in cases challenging the constitutionality of a duty—filing a protest with Customs is an utter futility because Customs is powerless to perform any active role in the determination of the constitutionality of the assessment. The Federal Circuit held that—because filing a protest with Customs would be futile—plaintiffs are not required to file a protest in cases involving constitutional challenges to duties, such that the residual jurisdiction provision of 28 U.S.C. § 1581(i) is the proper basis of jurisdiction rather than § 1581(a).").

8. Defendant U. S. Customs and Border Protection ("CBP") is a component of the U.S. Department of Homeland Security, and it is headquartered in Washington, DC. CBP is responsible for the management and control of the United States border, regulating the movement of goods into the United States. Its responsibilities include the collection of any import tariffs and customs duties levied on those goods.

9. Defendant Rodney S. Scott is being sued in his official capacity as Commissioner of CBP.

10. Defendant U.S. Department of Homeland Security ("DHS") is an executive department of the United States government, and it is headquartered in Washington, DC.

11. Defendant Markwayne Mullin is being sued in his official capacity as Secretary of DHS.

12. Defendant U.S. Department of Commerce is an agency of the United States government, and it is headquartered in Washington, DC.

13. Defendant Howard Lutnick is being sued in his official capacity as Secretary of Commerce.

14. Defendant U.S. Trade Representative is an agency of the United States government, and it is headquartered in Washington, DC.

15. Defendant Jamieson Greer is being sued in his official capacity as the U.S. Trade Representative.

16. Defendant U.S. International Trade Commission is a quasi-judicial agency of the United States government, and it is headquartered in Washington, DC.

17. Defendant Executive Office of the President is a collection of components that assist with and oversee core functions of the Executive Branch, including the implementation of executive orders, and it is headquartered in Washington, DC.

18. Defendant U.S. Department of the Treasury is an agency of the United States government, and it is headquartered in Washington, DC.

19. Defendant Scott Bessent is being sued in his official capacity as Secretary of the Treasury.

20. Defendant United States of America is a statutory defendant under 28 U.S.C. § 1581 and 5 U.S.C. § 702. *See Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001) (§ 1581 waives sovereign immunity).

21. Defendants are collectively referred to in this Complaint as "Defendants."

## FACTUAL AND LEGAL BACKGROUND

### The Executive Orders

22. On February 1, 2025, the Executive Branch issued three executive orders declaring a national emergency and invoking "authority under section 1702(a)(1)(B) of IEEPA" to impose tariffs (by modifying the Harmonized Tariff Schedule of the United States ("HTSUS")) on Canada, China, and Mexico—e.g., imposing an additional 10% tariff rate for China.[4,5] The Executive Branch relied on IEEPA, the National Emergencies Act ("NEA"), 50

[4] Exec. Order No. 14193, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7, 2025); Exec. Order No. 14194, Imposing Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 9,117 (Feb. 7, 2025).

[5] In its *V.O.S. Selections, Inc. v. Trump* opinion, the Federal Circuit referred to the tariffs imposed on Canada, China, and Mexico by the three February 1, 2025 executive orders as the "Trafficking Tariffs." 149 F.4th at 1319-20.

U.S.C. § 1601 et seq., Section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as a statutory basis.

23. On March 3, 2025, the Executive Branch amended the IEEPA tariff rate for China from 10% to 20%.[6]

24. Continuing to rely on the same statutory basis, the Executive Branch issued an executive order on April 2, 2025 "declar[ing] a national emergency arising from conditions reflected in large and persistent annual U.S. goods trade deficits . . . ," and imposing a blanket 10% tariff rate on all goods (by again modifying the HTSUS) effective April 5, 2025, with country-specific tariffs exceeding 10% going into effect on April 9, 2025.[7,8] For example, the tariff rate for goods imported from China increased to 34%.

25. Also on April 2, 2025, the Executive Branch eliminated the de minimis exemption[9] for low-value imports from China.[10]

26. On April 8, 2025, the Executive Branch amended the IEEPA tariff rate for China from 34% to 84% and increased China's de minimis exemption tariff rate.[11]

---

[6] Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[7] Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[8] The Federal Circuit referred to the tariffs imposed by April 2, 2025 executive order as the "Reciprocal Tariffs" in its *V.O.S. Selections, Inc. v. Trump* opinion. 149 F.4th at 1320-21.

[9] The de minimis exemption allows for the import of many goods priced at a certain value (or below) to enter the United States free of duty and tax.

[10] Exec. Order No. 14256, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China as Applied to Low-Value Imports, 90 Fed. Reg. 14,899 (Apr. 7, 2025).

[11] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports From the People's Republic of China, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

27. On April 9, 2025, the Executive Branch amended its April 2, 2025 executive order, the Executive Branch amended the IEEPA tariff rate for China from 84% to 125% and increased China's de minimis exemption tariff rate, while pausing country-specific IEEPA tariffs until July 9, 2025.[12]

28. The Executive Branch suspended the 125% IEEPA rate for China—imposing a 10% rate instead—and reduced China's de minimis exemption tariff rate in executive orders issued on May 12, 2025, August 11, 2025, and November 4, 2025.[13]

29. In an amendment issued in July 2025, the Executive Branch further extended the country-specific tariff rate pause until August 1, 2025.[14]

30. Thereafter, the Executive Branch continued to adjust the IEEPA tariff rates.[15]

31. Defendants continued to impose the IEEPA tariffs until on or about 12 a.m. on February 24, 2026. CBP, CSMS # 67834313 - Ending Collection of International Emergency Economic Powers Act Duties (Feb. 22, 2026).

32. The tariffs imposed by Executive Order Nos. 14195 (February 1, 2025), 14228 (March 3, 2025), 14256 (April 2, 2025), 14257 (April 2, 2025), 14259 (April 8, 2025), 14266 (April 9, 2025), 14298 (May 12, 2025), 14316 (July 7, 2025), 14326 (July 31, 2025), 14334

---

[12] Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment, 90 Fed. Reg. 15,625 (Apr. 15, 2025).

[13] Exec. Order No. 14298, Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China, 90 Fed. Reg. 21,831 (May 21, 2025); Exec. Order No. 14334, Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China, 90 Fed. Reg. 39,305 (Aug. 14, 2025); Exec. Order No. 14358, Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China, 90 Fed. Reg. 50,729 (Nov. 7, 2025).

[14] Exec. Order No. 14316, Extending the Modification of the Reciprocal Tariff Rates, 90 Fed. Reg. 30,823 (July 10, 2025).

[15] *See, e.g.*, Exec. Order No. 14326, Further Modifying the Reciprocal Tariff Rates, 90 Fed. Reg. 37,963 (Aug. 6, 2025).

(August 11, 2025), and 14358 (November 4, 2025), and any and all modifications and amendments thereto, are hereinafter referred to in this Complaint as the "Challenged Orders." The tariffs imposed by the Challenged Orders are hereinafter referred to in this Complaint as the "IEEPA Tariffs."

**Implementation, Collection, And Enforcement**

33. The Challenged Orders authorized the Secretary of Homeland Security, the Secretary of Commerce, the U.S. Trade Representative, and/or the Secretary of the Treasury to implement the IEEPA Tariffs.

34. The U.S. International Trade Commission is responsible for publishing and maintaining the HTSUS, including Chapter 99, which temporarily amends or modifies Chapters 1 through 98 or imposes additional duties or import restrictions.[16] Chapter 99 was updated to implement and effectuate the collection of the IEEPA Tariffs in response to the Challenged Orders.

35. CBP is responsible for classifying all imported merchandise under the HTSUS. *See* 19 U.S.C. § 1202; *see also* 19 U.S.C. § 1500. As part of the process, the "importer of record" must file an "entry" with CBP declaring the value, country of origin, classification, and rate of duty applicable to the merchandise, 19 U.S.C. § 1484(a)(1)(B), and deposit estimated duties and fees based on the supplied information. CBP will "liquidate" the entry to make a final computation or ascertainment of duties owed on that entry of merchandise, *see* 19 C.F.R. § 159.1, 19 U.S.C. § 1500, after which CBP will collect any additional amounts due, with interest, if the importer's deposit is lower than the final assessment or refunds any excess deposit, with interest, if the deposit is higher than the final assessment. 19 U.S.C. § 1505(b); *see*

[16] Chapters 1 through 97 of the HTSUS classify goods, while Chapter 98 in part enables imports to avoid some or all duties under certain scenarios (e.g., duty free).

*also id.* § 1592 (describing penalties and related procedures). If CBP does not liquidate an entry, liquidation occurs after one year by operation of law. *See id.* § 1504(a)(1).

36. "Reliquidation" is the re-calculation of the duties accruing on an entry.[17] CBP will refund duties "[w]henever it is ascertained on liquidation or reliquidation of an entry or reconciliation that more money has been deposited or paid as duties than was required by law to be so deposited or paid." *See id.* § 1520(a)(1).

37. As an importer of record, Plaintiff was required to include the Chapter 99 secondary classifications implementing the IEEPA Tariffs to its merchandise on the entry summaries it submitted to CBP, and to pay duties and fees that included the IEEPA Tariffs.

**IEEPA Tariffs Refunds**

38. CBP developed a new capability within its system of record for imported merchandise called the Consolidated Administration and Processing of Entries (CAPE) to calculate and provide refunds of duties imposed under IEEPA. *Freestyle World, Inc. v. U.S. Customs and Border Protection*, Ct. Int'l Trade Case No. 26-1088, ECF No. 24, B. Lord Decl. at ¶ 2 (Aug. 4, 2026).

39. As of this filing, CBP is challenging its authority to refund all the IEEPA Tariffs collected from importers without an order by the Court.

**The Challenged Orders And Corresponding IEEPA Tariffs Are Contrary To Law**

40. As the Supreme Court concluded, IEEPA does not authorize the Executive Branch to impose tariffs. *Learning Res.*, 2026 WL 477534, at *14. As such, the Challenged Orders and the corresponding IEEPA Tariffs are unlawful.

[17] *AM/NS Calvert LLC v. United States*, 654 F. Supp. 3d 1324, 1333 (Ct. Int'l Trade 2023) (cleaned up).

41. According to Article I of the U.S. Constitution, "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States . . . ." U.S. Const. art. I, § 1. Congressional powers include the power to "lay and collect Taxes, Duties, Imposts and Excises," *id.*, § 8, cl. 1, and to "regulate Commerce with foreign Nations." *Id.*, § 8, cl. 3. Thus, the power to impose taxes, and in turn tariffs, rests with Congress.

42. Congress may "seek[ ] assistance, within proper limits, from its coordinate Branches" "to secure the 'effect intended by its acts of legislation.' " *Touby v. United States*, 500 U.S. 160, 165 (1991) (citation omitted); *Fed. Commc'ns Comm'n v. Consumers' Rsch.* ("Consumers' Research"), 606 U.S. 656, 664, 672 (2025) (citation omitted).

43. "When Congress has delegated its tariff powers, it has done so in explicit terms, and subject to strict limits. Congress has consistently used words like 'duty' in statutes delegating authority to impose tariffs." *Learning Res.*, 2026 WL 477534, at *8. "And it has conditioned exercise of the tariff power on demanding procedural prerequisites." *Id.* (citations omitted). Congress did neither here. *Id.* at *11.

44. IEEPA specifies:

> [T]he President may, under such regulations as he may prescribe, by means of instructions, licenses, or otherwise--
>
> (A) investigate, regulate, or prohibit--
>
> (i) any transactions in foreign exchange,
>
> (ii) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such transfers or payments involve any interest of any foreign country or a national thereof,
>
> (iii) the importing or exporting of currency or securities,
>
> by any person, or with respect to any property, subject to the jurisdiction of the United States; [or]

> (B) investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States . . . .

50 U.S.C. § 1702(a).

45. "Absent from this lengthy list of powers is any mention of tariffs or duties. That omission is notable in light of the significant but specific powers Congress did go to the trouble of naming. It stands to reason that had Congress intended to convey the distinct and extraordinary power to impose tariffs, it would have done so expressly—as it consistently has in other tariff statutes." *Learning Res.*, 2026 WL 477534, at *10 (citations omitted).

46. "When Congress addresses both the power to regulate and the power to tax, it does so separately and expressly. . . . That Congress did not grant those authorities separately here is strong evidence that 'regulate' in IEEPA does not include taxation." *Id.* at *11; *see also id.* (citations omitted) ("None of IEEPA's authorities includes the distinct and extraordinary power to raise revenue. And the fact that no President has ever found such power in IEEPA is strong evidence that it does not exist.").

47. "[T]he terms of IEEPA do not authorize tariffs." *Id.* at *13; *see also id.* at *11 (cleaned up) (power to "regulate . . . importation," as granted to the President in IEEPA, does not embrace the power to impose tariffs).

48. Nor does the Executive Branch "point to clear congressional authorization" to justify the extraordinary assertion of the power to impose tariffs under IEEPA. *Id.* at *10 (cleaned up).

49. As the Supreme Court has explained, "there are 'extraordinary cases' that call for a different approach[ than statutory construction]—cases in which the 'history and the breadth of

the authority that [the agency] has asserted,' and the 'economic and political significance' of that assertion, provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022) (citations omitted). "Under this body of law, known as the major questions doctrine, given both separation of powers principles and a practical understanding of legislative intent, the agency must point to 'clear congressional authorization' for the authority it claims." *Id.* (citation omitted).

50. "Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle device[s].' " *Id.* at 723 (citation omitted) (alteration in original). "Nor does Congress typically use oblique or elliptical language to empower an agency to make a 'radical or fundamental change' to a statutory scheme." *Id.* (citation omitted).

51. In the absence of " ' "clear congressional authorization," ' " the Supreme Court will conclude that Congress has not entrusted questions of economic and political significance to another branch. *See Biden v. Nebraska*, 600 U.S. 477, 505-06 (2023) (citation omitted). Indeed, the Supreme Court " 'typically greet[s]' assertions of 'extravagant statutory power over the national economy' with 'skepticism.' " *W. Virginia*, 597 U.S. at 723 (citation omitted).

52. In utilizing IEEPA to impose the IEEPA Tariffs, the Executive Branch "assert[ed] the extraordinary power to unilaterally impose tariffs of unlimited amount, duration, and scope." *Learning Res.*, 2026 WL 477534, at *13 (cleaned up). "In light of the breadth, history, and constitutional context of that asserted authority, [the Executive Branch] must identify clear congressional authorization to exercise it." *Id.* "IEEPA's grant of authority to 'regulate . . . importation' falls short." *Id.*[18]

[18] *See also Learning Res.*, 2026 WL 477534, at *9 (cleaned up) (alteration in original) ("The lack of historical precedent for the IEEPA tariffs, coupled with the breadth of authority that the President now claims, is a telling indication that the tariffs extend beyond the President's

53. Because IEEPA does not authorize the Executive Branch to impose tariffs, *id.* at *14, the Challenged Orders and corresponding IEEPA Tariffs are invalid as contrary to law.

**No Other Statutory Basis Authorizes The IEEPA Tariffs**

54. The preambles to the Challenged Orders also invoke the National Emergencies Act, 50 U.S.C. § 1601 et seq., Section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 as providing the Executive Branch with the substantive authority to enact the IEEPA Tariffs. But, none do.

55. Specifically, "[t]he NEA governs procedures for declaring and ending national emergencies; section 604 of the Trade Act of 1974 requires the President to update the HTSUS to reflect import duties but does not provide the substantive authority to impose such duties; and 3 U.S.C. § 301 simply allows the President to delegate powers within the Executive Branch." *V.O.S. Selections*, 149 F.4th at 1321 n.7.

**Alternatively, The Challenged Orders Are Unconstitutional Under The Nondelegation Doctrine**[19]

56. The Challenged Orders are unconstitutional under the nondelegation doctrine.

57. "Accompanying [the] assignment of [all legislative] power to Congress [under Article I of the Constitution] is a bar on its further delegation . . . ." *Consumers' Research*, 606 U.S. at 672 (citation omitted).

58. " '[R]ooted in the principle of separation of powers that underlies our tripartite system of Government,' " the nondelegation doctrine precludes Congress from "constitutionally

legitimate reach. . . . The economic and political significance of the authority the President has asserted likewise provide[s] a reason to hesitate before concluding that Congress meant to confer such authority.").

[19] Plaintiff is including an alternative basis regarding the unconstitutionality of the Challenged Orders out of an abundance of caution.

delegat[ing] its legislative power to another branch of the Government." *Touby*, 500 U.S. at 165 (citation omitted).

59. Rather, having been given the power to "lay and collect Duties, Imposts and Excises" under the Constitution, U.S. Const. art. I, § 8, cl. 1, Congress must present an " 'intelligible principle,' " to "permissibly" delegate any of these powers. *Touby*, 500 U.S. at 165 (citation omitted) ("So long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power.' " (alterations in original)).[20]

60. Where the grant of congressional authority will " 'affect the entire national economy,' " the " 'guidance' needed [from Congress] is greater." *Consumers' Research*, 606 U.S. at 673 (citation omitted). That is, Congress must "impose[ ] ascertainable and meaningful guideposts." *See id.* at 681.[21]

61. "[W]henever Congress intends to delegate to the President the authority to impose tariffs, it does so explicitly, either by using unequivocal terms like tariff and duty, or via an overall structure which makes clear that Congress is referring to tariffs. This is no surprise, as the core Congressional power to impose taxes such as tariffs is vested exclusively in the legislative branch by the Constitution; when Congress delegates this power in the first instance, it does so clearly and unambiguously." *V.O.S. Selections*, 149 F.4th at 1332 (citation omitted).

---

[20] *See also Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 606 U.S. 656, 673 (2025) (citation omitted).

[21] *See also id.* at 683 (U.S. Supreme Court looks at whether Congress has given "appropriate" and "adequate" guidance), 692 (finding congressional policy was "clear and limiting"); *Touby v. United States*, 500 U.S. 160, 166 (1991) (finding Congress set forth an intelligible principle because statute "meaningfully constrained" the discretion of the U.S. Attorney General to define criminal conduct).

62. "The Executive's use of [the IEEPA T]ariffs qualifies as a decision of vast economic and political significance . . . ." *See id.* at 1336 (citation omitted). But, no clear, much less limiting, guidance on the power of the Executive Branch is found in IEEPA. "The statute neither mentions tariffs (or any of its synonyms) nor has procedural safeguards that contain clear limits on the President's power to impose tariffs." *Id.* at 1332.

63. "[I]n enacting IEEPA, [Congress] did not give the President wide-ranging authority to impose tariffs of the nature of the [IEEPA] Tariffs simply by the use of the term 'regulate . . . importation.' " *See id.* at 1337; *see also id.* ("Reading the phrase 'regulate . . . importation' to include imposing these tariffs is 'a wafer-thin reed on which to rest such sweeping power.' " (citation omitted)).

64. Accordingly, the Challenged Orders are unconstitutional.

**<u>Plaintiff Has Paid IEEPA Tariffs</u>**

65. Plaintiff imported merchandise into the United States that was subject to the unlawful IEEPA Tariffs.

66. Plaintiff has paid IEEPA Tariffs on its entries.

## CAUSES OF ACTION

### Count I
### The Challenged Orders and Corresponding IEEPA Tariffs Are Ultra Vires
### (Against All Defendants)

67. Plaintiff realleges and incorporates by reference paragraphs 1 through 66 of this Complaint as if set forth fully herein.

68. As the Supreme Court held in *Learning Res., Inc. v. Trump*, "IEEPA does not authorize the President to impose tariffs." 2026 WL 477534, at *14. In doing so, the Supreme Court affirmed the Federal Circuit's decision, *id.*, which in turn affirmed the Court's "holding that the Trafficking and Reciprocal Tariffs imposed by the Challenged Executive Orders exceed

the authority delegated to the President by IEEPA's text," and the "grant of declaratory relief that the orders are 'invalid as contrary to law.' " *V.O.S. Selections*, 149 F.4th at 1340 (citation omitted).

69. The Challenged Orders and corresponding IEEPA Tariffs fall into one of three categories: (i) they are identical to the Challenged Executive Orders and corresponding IEEPA tariffs at issue in *Learning Res., Inc. v. Trump*; (ii) they are modifications and amendments of the Challenged Executive Orders and corresponding IEEPA tariffs at issue in *Learning Res., Inc. v. Trump*; or (iii) they are substantially duplicative of the Challenged Executive Orders and corresponding IEEPA tariffs at issue in *Learning Res., Inc. v. Trump* with respect to the authority claimed, the framework of the concerns underlying the declared emergency, and the impact, i.e., modifying the HTSUS to reflect higher tariff rates.

70. Put differently, the Challenged Orders improperly rely on IEEPA to modify the HTSUS and impose the unlawful IEEPA Tariffs.

71. Based on the Supreme Court's binding decision in *Learning Res., Inc. v. Trump*, the Challenged Orders are likewise beyond the authority of the Executive Branch, i.e., are ultra vires, and are accordingly unlawful and void ab initio and without effect on Plaintiff.

72. Because the Challenged Orders and corresponding IEEPA Tariffs have irreparably harmed Plaintiff, Defendants should be ordered to refund fully all the IEEPA Tariffs that have been imposed on Plaintiff, with interest as provided by law. *See, e.g.*, *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1363 (Fed. Cir. 2019) (the Court has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties"). *See also AGS Co.*, 2025 WL 3634261, at *2 (cleaned up) ("[A]s the Government notes in its response to Plaintiffs' motion for a preliminary injunction here, it 'has made very clear—both in this case

and in related cases—that it will not object to the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful.' ") ("Judicial estoppel would prevent the Government from taking an inconsistent approach after a final result in *V.O.S.*"); *V.O.S. Selections, Inc. v. Trump*, Fed. Cir. Case No. 25-1812, ECF No. 6, Gov't. Mot. Stay Pending Appeal at 25 (May 29, 2025) ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues.").

**Count II[22]**
**In the Alternative, The Challenged Orders And Corresponding IEEPA Tariffs Are Unconstitutional**
**(Against All Defendants)**

73. Plaintiff realleges and incorporates by reference paragraphs 1 through 72 of this Complaint as if set forth fully herein.

74. The Challenged Orders are unconstitutional under the nondelegation doctrine.

75. " 'The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government,' " precluding Congress from "constitutionally delegat[ing] its legislative power to another branch of the Government." *Touby*, 500 U.S. at 165 (citation omitted).

76. The Constitution gave Congress the power to "lay and collect Duties, Imposts and Excises." U.S. Const. art. I, § 8, cl. 1.

77. To "permissibly" delete any of its powers, Congress must present an " 'intelligible principle.' " *Touby*, 500 U.S. at 165 (citation omitted).

[22] *See* Footnote 19, *supra*.

78. "So long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power.' " *Id.* (citation omitted) (alterations in original).

79. The " 'guidance' needed [from Congress] is greater" where the grant of congressional authority will " 'affect the entire national economy.' " *Consumers' Research*, 606 U.S. at 673 (citation omitted).

80. "The Executive's use of [the IEEPA T]ariffs qualifies as a decision of vast economic and political significance . . . ." *Id.* at 1336 (citation omitted).

81. Yet, IEEPA "neither mentions tariffs (or any of its synonyms) nor has procedural safeguards that contain clear limits on the President's power to impose tariffs." *V.O.S. Selections*, 149 F.4th at 1332.

82. Congress did not "sufficiently guide[ ] and constrain[ ] the discretion that it lodged" with the Executive Branch under IEEPA—did not provide "ascertainable and meaningful guideposts" or "sufficient standards to enable both the courts and the public to ascertain where the [government] has followed the law." *See Consumers' Research*, 606 U.S. at 664, 673, 681 (cleaned up).

83. The Challenged Orders and corresponding IEEPA Tariffs are thus unconstitutional under the nondelegation doctrine.

84. Because the Challenged Orders and corresponding IEEPA Tariffs have irreparably harmed Plaintiff, Defendants should be ordered to refund fully all the IEEPA Tariffs that have been imposed on Plaintiff, with interest as provided by law. *See, e.g.*, *Sumecht*, 923 F.3d at 1363 (the Court has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties"). *See also AGS Co.*, 2025 WL 3634261, at *2

(cleaned up) ("[A]s the Government notes in its response to Plaintiffs' motion for a preliminary injunction here, it 'has made very clear—both in this case and in related cases—that it will not object to the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful.' ") ("Judicial estoppel would prevent the Government from taking an inconsistent approach after a final result in V.O.S."); *V.O.S. Selections, Inc. v. Trump*, Fed. Cir. Case No. 25-1812, ECF No. 6, Gov't. Mot. Stay Pending Appeal at 25 (May 29, 2025) ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues.").

**Count III**
**Declaratory Relief**
**28 U.S.C. § 2201**

85. Plaintiff realleges and incorporates by reference paragraphs 1 through 84 of this Complaint as if set forth fully herein.

86. "In a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

87. An actual controversy within this Court's jurisdiction has arisen and now exists between Plaintiff and Defendants.

88. This lawsuit arises from the authority—or lack thereof—of the Executive Branch under IEEPA, or alternatively, the constitutionality of the Challenged Orders, and in turn, the illegality of the Challenged Orders and corresponding IEEPA Tariffs, the lack of authority of the Secretary of Homeland Security, the Secretary of Commerce, the United States Trade

Representative, and the Secretary of the Treasury to implement the Challenged Orders and IEEPA Tariffs, the lack of authority by the U.S. International Trade Commission to modify the HTSUS to implement the Challenged Orders and IEEPA Tariffs, and CBP's lack of authority to collect and enforce the IEEPA Tariffs.

89. Plaintiff is an importer of record, importing merchandise from a country that was subject to the Challenged Orders and corresponding IEEPA Tariffs.

90. As a result of the Challenged Orders and corresponding IEEPA Tariffs, Plaintiff has suffered injury by being required to pay IEEPA Tariffs on goods it imported into the United States.

91. Plaintiff will continue to suffer injury until such time as Plaintiff receives a full refund of all IEEPA tariffs it has paid, plus interest at the legal rate.

92. A judicial determination of these issues and of the respective rights and obligations of Plaintiff and Defendants is necessary and appropriate at this time under the circumstances because of the injury Plaintiff has, continues to, and will suffer as a result of the unlawful Challenged Orders and corresponding IEEPA Tariffs.

93. Plaintiff prays for a declaration by the Court finding (i) the Challenged Orders and corresponding IEEPA Tariffs are ultra vires, unlawful, void ab initio, and without effect as to Plaintiff, because the Challenged Orders are beyond the authority of the Executive Branch under IEEPA, or in the alternative, the Challenged Orders are unconstitutional under the nondelegation doctrine; (ii) all revisions to the HTSUS implementing the IEEPA Tariffs under Chapter 99 are and were unlawful, void ab initio, and without effect on Plaintiff; (iii) the Secretary of Homeland Security, the Secretary of Commerce, the U.S. Trade Representative, and the Secretary of the Treasury lacked the authority to implement the Challenged Orders and the IEEPA Tariffs; (iv)

the U.S. International Trade Commission lacked the authority to modify the HTSUS to implement the IEEPA Tariffs; (v) CBP lacked authority to collect and enforce the IEEPA Tariffs on Plaintiff; and (vi) the requirement that Plaintiff classify its merchandise under the IEEPA Tariff-implementing secondary classification of Chapter 99 of the HTSUS was unlawful.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that the Court:

a. Declare the Executive Branch lacked authority under IEEPA to impose tariffs, or alternatively, that the Challenged Orders are unconstitutional;

b. Declare the Challenged Orders ultra vires, unlawful, void ab initio, without effect on Plaintiff;

c. Declare the IEEPA Tariffs ultra vires, unlawful, void ab initio, and without effect on Plaintiff;

d. Declare all revisions to the HTSUS implementing the IEEPA Tariffs under Chapter 99 unlawful, void ab initio, and without effect on Plaintiff;

e. Declare that the Secretary of Homeland Security, the Secretary of Commerce, the U.S. Trade Representative, and the Secretary of the Treasury lacked the authority to implement the Challenged Orders and the IEEPA Tariffs;

f. Declare that the U.S. International Trade Commission lacked the authority to amend the HTSUS to implement the Challenged Orders and the IEEPA Tariffs;

g. Declare that CBP lacked authority to collect and enforce the IEEPA Tariffs;

h. Declare the requirement that Plaintiff classify its merchandise under IEEPA Tariff-implementing secondary classification of Chapter 99 of the HTSUS unlawful;

i. Order Defendants to refund Plaintiff the IEEPA Tariffs that have been collected, with interest as provided by law, through liquidation, reliquidation, and/or a money judgment;

j. Award Plaintiff other damages as are appropriate;

k. Award Plaintiff the attorneys' fees and costs it incurred in pursuing this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) and any other applicable law; and

l. Grant all other relief that the Court deems just and proper.

Dated: August 26, 2026

Respectfully Submitted,

By: /s/ G. Brent Connor

G. Brent Connor
VEDDER PRICE P.C.
1401 New York Ave., NW, Suite 500
Washington, DC 20005
T: +1 202 312 3363
F: +1 202 312 3322
bconnor@vedder.com

Attorneys for Plaintiff VLCor USA Inc.